IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| ANTHONY BUTCH, <br><br> Plaintiff <br> v. <br><br> JUAN MORALES, <br> DENIS ENGLE, <br> KIM RHODES, and <br> KUTZTOWN UNIVERSITY <br><br> Defendants | CIVIL ACTION NO. 15-2514 |

**Henry S. Perkin, M.J.**                                                              **September 23, 2016**

## MEMORANDUM

This matter is before the Court on the Motion to Dismiss Plaintiff's Amended Complaint, which motion was filed by defendants on February 10, 2016.[1] Plaintiff's Response in Opposition to Defendants' Partial Motion to Dismiss was filed February 20, 2016, and a Reply Brief in Support of Defendants' Motion to Dismiss Plaintiff's Amended Complaint was filed with leave of Court on September 13, 2016. Having reviewed and considered the contentions of the parties, the Court is prepared to rule on this matter.

## Procedural History

On May 7, 2015, Plaintiff Anthony Butch initiated this matter by filing a civil rights complaint against Juan Morales, Denis Engle, Kim Rhodes, and Kutztown University in the United States District Court for the Eastern District of Pennsylvania. In Count I of his first Amended Complaint, Plaintiff seeks monetary relief pursuant to 42 U.S.C. §1983 for alleged

---

[1] A Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Amended Complaint was filed in conjunction with the motion to dismiss. See Dkt. No. 18.

violations of his First Amendment constitutional rights in connection with alleged retaliatory actions taken against him beginning in 2012. In Count II of his First Amended Complaint, Plaintiff asserts claims of discrimination, a hostile work environment, and retaliation pursuant to Title VII (42 U.S.C. §2000e, *et seq*) and the Pennsylvania Human Relations Act ("PHRA") (43 P.S. §§951, *et seq*). Plaintiff also seeks punitive damages against the defendants.

## Facts

According to the First Amended Complaint, the pertinent facts to this Court's determination are as follows:

Plaintiff, Anthony Butch ("Plaintiff"), was hired on or about July 31, 2012 by Kutztown University as a painter/plasterer. His job duties and responsibilities included, but were not limited to, mixing paint, preparing the work area, spackling, plastering, painting, and dry-walling. His supervisors were defendant Juan Morales (night maintenance supervisor),[2] Kyle Mills, Jeff Grimm, and defendant Kim Rhodes-Harris.[3] Defendant Dennis Engle is a human resource representative. All of the individual defendants (Juan Morales, Kim Rhodes, and Denis Engle) have been identified in the First Amended Complaint as being "supervisor[s] with control and authority over the Plaintiff's terms and conditions of employment with Kutztown University." See First Amended Complaint, Section III (Parties), at ¶¶6-8.

In the First Amended Complaint, Plaintiff avers that beginning in 2012, he expressed concerns to Juan Morales ("Morales") about the air quality and safety precautions in

---

[2] According to the First Amended Complaint, Plaintiff has since been approved for transfer to day shift and no longer works in night maintenance or under the supervision of Morales.

[3] While Kyle Mills and Jeff Grimm were also identified as supervisors, we note that they are not listed as individual defendants in Plaintiff's First Amended Complaint.

the "old main" building on campus. Plaintiff specifically complained that the material used in the building for the paint, walls, and ceiling was toxic, and that he needed a respirator when working in those buildings. Plaintiff contends that his safety concerns were never addressed. Instead, following Plaintiff's repeated complaints about the safety equipment, Morales began getting increasingly angry at Plaintiff for menial things, such as coming in on snow days, or asking for additional equipment.

Plaintiff avers that Morales would constantly harass and force him to harass a co-worker, Mike Benjamin ("Benjamin"). The harassment against Benjamin included derogatory name calling, statements that he was a bad influence and to stay away from him, nightly meetings called by Morales regarding how to further harass and berate Benjamin, constantly stalking Benjamin around campus and asking of his whereabouts, not allowing Benjamin to take breaks or use his cell phone, denying Benjamin vacation coverage, and other actions. Plaintiff contends that Morales only ordered the male employees to harass Benjamin, and that he did not order or compel any female employees of the custodial department to engage in this harassment.

Plaintiff contends that Morales made threatening comments on a daily basis about his personal hand gun, which he carried to work. Morales made statements that he "isn't afraid to use it." Morales also made other threatening comments such as the following: that he would send his family members to anybody's house if they gave him problems, and that he had family members in jail. It is also averred that Morales threatened to fight employees if they were to cross him the wrong way. Plaintiff avers that the threatening comments were discriminatory because they were only made to non-minority, white and male, employees.

3

Throughout the course of Plaintiff's employment, Morales, Dennis Engle ("Engle") and Kim Rhodes-Harris ("Rhodes") all enforced an unwritten rule that employees were not allowed to take vacation time during the active school year.  Morales, however, did not follow this rule, and was permitted to take multiple days of vacation during the school year.  Plaintiff avers that this was discriminatory and created a hostile work environment because Morales was treated differently than non-minority (white) employees.

On July 10, 2013, Morales assigned Plaintiff and co-worker Richard Studlack ("Studlack") to work in the "old main" building without proper safety equipment, such as a respirator, despite Plaintiff's previous statements about safety concerns.  Plaintiff avers that this was discriminatory in that only the non-minority (white) employees were assigned to work on this building.  Morales never assigned himself to do work on this building, but instead waited until the work was completed and the dust settled to inspect the building. As a result, Plaintiff avers that he and co-worker Studlack inhaled toxic particles, making them sick, requiring them to seek medical treatment, and rendering them unable to perform their job.

Following the July 10, 2013 incident wherein Plaintiff contends he was exposed to toxic fumes and particles, he filed several grievances with his union.  Grievances were filed (1) for not being provided with respirator and for sick time; (2) for overtime pay; (3) for holiday pay; and (4) for revocation of a break-time.  In August 2013, Plaintiff had a meeting with Kyle Mills regarding the toxic fumes and particles in the "old main" building.  Plaintiff requested the Material Data Safety Sheet ("MSDS") reports on the "old main" building, and also reported the toxic building materials as well as other safety violations to the Department of Labor and Industry.

In September 2013, Plaintiff reported an incident to Kutztown University's Office of Social Equity wherein he witnessed Morales engaging in sexual activity on campus during his working hours with another female employee named Ellen.

On October 21, 2013, Plaintiff gave a written statement to AFSCME, a public services employees union, regarding an assault by Morales against co-worker Benjamin.  Plaintiff testified that Morales would make him follow Benjamin around campus; that they would have daily "bitch session" about Benjamin; that Morales wouldn't let Benjamin take off on Saturdays; that Morales constantly spoke about and made threats regarding his personal hand gun and that he had family in jail that would "go after anyone that gave him problems;" and that Morales bragged about his road rage and fighting.  Although Morales, Engle, and Rhodes knew about this statement made to AFSCME, they failed to take any appropriate action.

In August 2014, a meeting was held between Plaintiff, Ray Dunkle (a union representative), and a human resources person regarding the ongoing AFSCME investigation for the assault and hostile work conditions Morales created for Benjamin.  During the course of this meeting, Plaintiff mentioned an incident where after he and Benjamin had moved a piece of scrap metal into the facilities area for recycling, he was immediately threatened with police action by human resources for stealing from the University.  Plaintiff avers that this threat of police action was an act of retaliation for his statements made during the August 2014 meeting regarding his statement to the AFSCME.  Plaintiff avers that although Morales, Engle, and Rhodes had knowledge of this incident, they again failed to take any appropriate action.

On September 11, 2014, Plaintiff filed a charge with the EEOC alleging acts of discrimination, retaliation, and hostile work environment against Morales, Engle, Rhodes, and

5

Kutztown University.  According to the First Amended Complaint, the EEOC charge included, but was not limited to, details concerning the following:

> 1. the harassment of co-worker Benjamin by Morales;
>
> 2. the threatening comments made by Morales to non-minority, white employees on a daily basis about his hand gun and family in jail;
>
> 3. Morales' refusal to allow white employees to take vacation; and
>
> 4. Morales' work assignments to Plaintiff and Studlack, wherein Morales required them to work in a hazardous building.

On January 16, 2015, Plaintiff testified at a deposition in favor of his co-worker, Studlack, regarding Studlack's federal court case for discrimination, hostile work environment, and retaliation against Morales and Kutztown University.  Plaintiff contends that both Engle and Rhodes had been notified about Studlack's lawsuit.

Subsequent to the filing of the EEOC charge and testimony in favor of Studlack, Plaintiff avers that Kutztown University, and the other named Defendants, took adverse actions against him, including, but not limited to, following him around campus, not allowing him to utilize his vacation days, and repealing his stepson's health benefits.  Specifically, with respect to his stepson's benefits, Plaintiff avers that he received a telephone call from the human resources benefit representative in November 2014 stating that his stepson was no longer eligible to receive health benefits because he was attending college out of state, despite having been on Plaintiff's health plan for two years prior without issue.  Plaintiff avers that this was contrary to his health plan, which provided that any child can be covered up until the age of 26, so long as they were attending full time post high school education.  Plaintiff received a phone call in January 2015

confirming that his stepson was no longer eligible for health benefits unless his premium payments were increased. On January 28, 2015, Plaintiff received another phone call from the benefits department at Kutztown University stating that "it was all a mistake" for his stepson to have been taken off the insurance plan.

## Standard of Review

On a motion to dismiss for failure to state a claim, courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir. 2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 554 (2007) (citing Papasan v. Allain, 478 U.S. 265, 268 (1986)).

In order to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

**Discussion**

**Count I - Claims for First Amendment Retaliation Pursuant to 42 U.S.C. §1983**

As noted above, Plaintiff has brought a claim against defendants for First Amendment retaliation pursuant to 42 U.S.C. §1983. As correctly noted by defendants, the Eleventh Amendment bars any Section 1983 claims against Kutztown University, and its employees acting in their official capacities.[4] Plaintiff concedes this by agreeing to withdraw, without prejudice,[5] all claims brought against Kutztown University brought under 42 U.S.C. §1983. See Plaintiff's Response at 14. Accordingly, Count I will be dismissed as to Kutztown University.

The Eleventh Amendment also bars a suit against state officials sued in their official capacities because the state is the real party in interest inasmuch as the plaintiff seeks recovery from the state treasury. Hafer v. Melo, 502 U.S. 21, 25 (1991) ("Although 'state officials literally are persons,' an official-capacity suit against a state officer 'is not a suit against the official but rather is a suit against the official's office. As such it is no different from a suit

---

[4] The Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction. Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 693 n.2 (3d Cir.1996) (citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98-100 (1984)). A party may properly raise Eleventh Amendment immunity in a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). Id.

Kutztown University, as part of the Pennsylvania State System of Higher Education ("PASSHE"), is not a person subject to liability for damages under Section 1983. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989); McCauley v. Univ. of the V.I., 618 F.3d 232, 241 (3d Cir. 2010); Bartlett v. Kutztown Univ., 2015 WL 766000, at *4, *12 (E.D. Pa. Feb. 23, 2015) (finding that the Third Circuit and district courts within the Circuit have consistently held that PASSHE and its member universities (including Kutztown University) are entitled to sovereign immunity under the Eleventh Amendment); Coulter v. East Stroudsburg Univ., 2010 WL 1780400 (M.D. Pa. May 4, 2010) (finding Eleventh Amendment precluded civil rights liability and therefore barred plaintiff's Section 1983 claim against a State System member university).

[5] Plaintiff asserts that the claims against Kutztown University are withdrawn without prejudice to bring this cause of action in a Pennsylvania state court pending the outcome of the remaining claims. This Court makes no comment as to whether Plaintiff will be permitted to bring such claims in state court, and, instead, will reserve that determination for the state courts.

against the State itself.'") (citing Will v. Michigan Dep't of State Police, 491 U.S. 58, 71, (1989)).  The Eleventh Amendment, however, does not bar suits against state officials in their personal capacities.  Id. at 23 (holding that "state officials sued in their individual capacities are 'persons' for purposes of §1983.").

In his response to the motion to dismiss, Plaintiff avers that he sued the individual defendants (Morales, Engle, and Rhodes) in their personal capacity.  However, in order to determine whether a plaintiff sued a defendant in his personal capacity, official capacity, or both, the Court must look to the complaint and the course of proceedings.  Atwell v. Schweiker, 274 F. App'x 116, 118 (3d Cir. 2007) (citing Melo v. Hafer, 912 F.2d 628, 635 (3d Cir. 1990), aff'd, 502 U.S. 21 (1991)).  Courts have found personal capacity claims where the plaintiff sued the official only and not the state.  Id. (citing Melo, 912 F.2d at 636).  Conversely, allegations that an official policy or custom led to the plaintiff's injuries supports the conclusion that the plaintiff is bringing an official capacity claim.  Woodson v. Prime Care Med., Inc., No. 12-cv-04919, 2013 U.S. Dist. LEXIS 8861, 2013 WL 247372, at *4 (E.D. Pa. Jan. 23, 2013).

In this matter, Plaintiff has sued both Kutztown University as well as Morales, Engle, and Rhodes, which indicates an intention to sue the individual defendants in their official capacity.  In addition, we note that the allegations contained in Plaintiff's First Amended Complaint are devoid of any assertions of personal liability as to the individual defendants.  To the contrary, Plaintiff identifies Morales, Engle, and Rhodes as "supervisor[s] with control and authority over the Plaintiff's terms and conditions of employment with Kutztown University" who, "as supervisors carried out Kutztown's policy of employment discrimination and retaliation."  See Plaintiff's First Amended Complaint, Section I (Introduction) at ¶ 3, Section III

(Parties) at ¶¶ 6-8, and Section V (Causes of Action) at ¶ 51.

This Court notes that in the Prayer for Relief section of Plaintiff's First Amended Complaint, Plaintiff avers that he seeks "punitive damages (limited to Morales and Rhodes-Harris and Engle in their personal capacity and only under their §1983 causes of action)." However, all of the allegations contained in the Complaint are directed against Kutztown University and the named defendants in their respective roles as supervisors with control and authority over the terms and conditions of Plaintiff's employment. See Plaintiff's First Amended Complaint, Section III (Parties) at ¶¶ 6-8.  Plaintiff also avers that defendants "Morales, Engle, and Rhodes, as supervisor employees, created a policy for Kutztown University and acted as aiders and abettors of that policy to discriminat[e] against subordinate employees based on sex and/or race; to create a hostile work environment and/or to retaliate against subordinate employees for opposing perceived actions to be illegal under Title VII or the First Amendment." See Plaintiff's First Amended Complaint, Section I (Introduction) at ¶ 3 and Section V (Causes of Action) at ¶ 51.  Plaintiff fails to allege that any of the named defendants acted in a personal capacity.  There is not a single allegation in the First Amended Complaint that the individual defendants were acting in anything other than their official capacities.

After a careful review of the First Amended Complaint, this Court concludes that Plaintiff brings this suit against the individual defendants in their official capacities only.  Such claims are barred by the Eleventh Amendment, and, accordingly, Count I will be dismissed in its entirety.

**Count II - Claims for Discrimination,
Hostile Work Environment, and Retaliation Pursuant to Title VII**

To establish a *prima facie* case of retaliation under Title VII, Plaintiff must plead (1) that he engaged in a protected activity; (2) that he suffered an adverse employment action; and (3) that there was a causal connection between the protected activity and the adverse employment action.  See Abramson v. William Paterson College, 260 F.3d 265, 286 (3d Cir. 2001).  Referring to the Complaint, defendants aver in their motion to dismiss that the actions alleged by Plaintiff do not constitute "adverse actions" as a matter of law.  More specifically, defendants contend that Plaintiff identifies four purported "adverse" actions taken against him in retaliation for his engagement in protected activity: (1) Human Resources threatened him with police action for stealing; (2) Mr. Morales began to follow him around campus; (3) Plaintiff was not allowed vacation days; and (4) Plaintiff's step son's health benefits were repealed.  In so doing, defendants avers that at least three of these actions do not constitute "adverse actions" as a matter of law and may therefore not form a basis for any retaliation claim.  See Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Amended Complaint at 17-19.  Because defendants do not address any of the other prongs, it appears to the Court that those prongs have been sufficiently pled in the First Amended Complaint.

At this point in the litigation, we find Plaintiff has sufficiently pled that he has suffered an adverse employment action.  At the very least, Plaintiff assertions regarding the denial of vacation time and health care benefits to his stepson (Plaintiff's First Amended Complaint, Section IV (Facts) at ¶ 29 and Section V (Causes of Action) at ¶ 46) appear to satisfy the second prong of the *prima facie* case for a retaliation claim.  Abramson, 260 F.3d at 288.  A

tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.  Burlington Indus. v. Ellerth, 524 U.S. 742, 761 (U.S. 1998).  Accordingly, defendants' motion to dismiss with respect to Plaintiff's Title VII claims is denied.

## Count II - Claims for Discrimination, Hostile Work Environment, and Retaliation Pursuant to PHRA

As correctly noted by defendants, the Eleventh Amendment similarly bars any claims under the PHRA against Kutztown University.[6]  Plaintiff concedes this by agreeing to withdraw, without prejudice,[7] all claims brought against Kutztown University brought under the PHRA.  See Plaintiff's Response at 14.  Accordingly, the PHRA claims contained in Count II will be dismissed as to Kutztown University.

Plaintiff contends, however, that even if Kutztown University is entitled to immunity by virtue of the Eleventh Amendment, this would not preclude him from pursuing claims against the individual defendants.  See Plaintiff's Response at 15-17.  We disagree.  First, as noted above, this Court concluded that the individual defendants were sued only in their official capacities.  The Eleventh Amendment bars a suit against state officials sued in their official capacities because the state is the real party in interest inasmuch as the plaintiff seeks

---

[6] As noted by defendants, Federal Courts do not have jurisdiction to order state agencies or officials to comply with state law. See Pennhurst , 465 U.S. at 105-106 (1984); Allegheny Cty. Sanitary Auth. v. USEPA, 732 F.2d 1167, 1173-1174 (3d Cir. 1984).  Neither pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment. Pennhurst, 465 U.S. at 121.

[7] Plaintiff asserts that the claims against Kutztown University are withdrawn without prejudice to bring this cause of action in a Pennsylvania state court pending the outcome of the remaining claims.  This Court makes no comment as to whether Plaintiff will be permitted to bring such claims in state court, and, instead, will reserve that determination for the state courts.

recovery from the state treasury.  Hafer, 502 U.S. at 25.

Further, even if Plaintiff had sued defendants Morales, Engle, and Rhodes, in their personal capacities, it is established that if an employer is not liable under the PHRA for any discriminatory practice, then an individual employee cannot be held liable for aiding and abetting a discriminatory practice.  See Deans v. Kennedy House, Inc., 998 F. Supp. 2d 393, 414 n.20 (E.D. Pa. 2014) ("Although the PHRA permits claims against individuals for aiding or abetting an unlawful discriminatory practice, . . . individual employees cannot be held liable if the employer is not liable for a discriminatory practice."), affirmed, 587 F. App'x 731 (3d Cir. 2014); Scott v. Sunoco Logistics Partners, LP, 918 F. Supp. 2d 344, 357 n.5 (E.D. Pa. 2013) ("If the employer is not liable for any discriminatory practice then an individual employee cannot be held liable for aiding and abetting a discriminatory practice."); Unangst v. Dual Temp Co., 2012 WL 931130, at *9 (E.D. Pa. Mar. 19, 2012) ("[Employees] cannot violate Section 955(e) when there is no corresponding Section 955(a) violation by an employer to aid and abet.").  Because Plaintiff has withdrawn the PHRA claims against Kutztown University, any purported PHRA claims against the individual employee defendants for aiding and abetting must also fail as a matter of law.  Accordingly,  the PHRA claims contained in Count II will be dismissed as to Morales, Engle, and Rhodes.

**Claims for Punitive Damages**

To the extent that Plaintiff seeks punitive damages in his Complaint, we note that government agencies are traditionally exempt from the assessment of punitive damages against them.  See Feingold v. SEPTA, 517 A.2d 1270 (Pa. 1986); see also Doe v. County of Centre, PA, 242 F.3d 437 (3d Cir. 2001).  Although Plaintiff has conceded that punitive damages are not

recoverable against Kutztown University under Title VII or the PHRA, he asserts that he is entitled to punitive damages against the individual defendants in their personal capacities pursuant to §1983.  As noted above, however, the §1983 claims have been dismissed against the individual defendants because, as the First Amended Complaint indicates, Plaintiff did not bring suit against the individual defendants in their personal capacities.  Accordingly, Plaintiff is not entitled to punitive damages against Morales, Engle, or Rhodes pursuant to §1983.

## Conclusion

Defendants motion to dismiss is granted in part.  Count I of Plaintiff's First Amended Complaint is dismissed.  The PHRA claims contained in Count II of the First Amended Complaint are dismissed.  Any claims for punitive damages pursuant to §1983, Title VII, or the PHRA are dismissed.  In all other respects, the motion to dismiss is denied.

An Order follows.